IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR185 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. NIXON, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

The United States of America, through its undersigned counsel, files this trial memorandum in the above-captioned matter scheduled for trial beginning December 3, 2018. Nixon was indicted on April 11, 2018, with five (5) counts of Sexual Exploitation of Children, a violation of 18 U.S.C. § 2251(a), involving five separate minor victims; one (1) count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct, a violation of 18 U.S.C. § 2252(a)(2); and one (1) count of Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B).  In addition to providing a summary of its case, the Government seeks to identify several evidentiary issues for the Court to consider.

**I.     CHARGES**

Count 1: Sexual Exploitation of Children, 18 U.S.C. § 2251(a) [Minor Victim #1]

Count 2: Sexual Exploitation of Children, 18 U.S.C. § 2251(a) [Minor Victim #2]

Count 3: Sexual Exploitation of Children, 18 U.S.C. § 2251(a) [Minor Victim #3]

Count 4: Sexual Exploitation of Children, 18 U.S.C. § 2251(a) [Minor Victim #4]

Count 5: Sexual Exploitation of Children, 18 U.S.C. § 2251(a) [Minor Victim #5]

Count 6: Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct 18 U.S.C. § 2252(a)(2)

Count 7: Possession of Child Pornography 18 U.S.C. § 2252(a)(5)(B)

## II. LEGAL ANALYSIS

### A. SEXUAL EXPLOITATION OF MINORS (COUNTS ONE THROUGH FIVE)

Counts One through Five of the Indictment charge the defendant with violating Title 18, United States Code, Section 2251(a), which provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in… any sexually explicit conduct for the purpose of producing any visual depiction of such conduct… shall be punished …, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

To sustain its burden of proof for Sexual Exploitation of Minors in the present case, the government must prove beyond a reasonable doubt:

> First: That the victim was less than 18 years old;
>
> Second: That the defendant persuaded, induced, or enticed the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct;
>
> Third: (a) The defendant knew or had reason to know that such visual depiction would be transported using any means or facility of interstate or foreign commerce; or
>
> (b) The defendant knew or had reason to know that such visual depiction would be transported in or affecting interstate or foreign commerce; or

> (c) Such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer; or
>
> (d) the visual depiction was actually transported using any means and facility of interstate and foreign commerce; or
>
> (e) the visual depiction was actually transported in and affecting interstate and foreign commerce.

See 18 U.S.C. § 2251(a); United States v. Engle, 676 F.3d 405, 412 (4th Cir. 2012).

    1.    <u>First Element – Minor Victims 1 through 5 Were Under 18</u>

With respect to the first element, the defendant's knowledge of the victim's age is neither an element of the offense nor available as an affirmative defense. <u>See United States v. Humphrey</u>, 608 F.3d 955 (6th Cir. 2010). Accordingly, so long as the government proves that the victims were, in fact, under 18 years of age at the time of the charged conduct, the government has satisfied its burden with respect to this element. (See the above statements of facts outlining each victim's date of birth).

    2.    <u>2. Second Element – the defendant persuaded, induced, or enticed the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct</u>

This case is first and foremost a production of child pornography case. It fits squarely within Section 2251(a), which punishes not just the coercion of minors in the production of child pornography (which is only one way of violating the statute), but – equally important – also the persuasion, inducement, and enticement of children for such production. The plain language of the statute covers the defendant's conduct here, and congressional intent confirms it.

Section 2251(a) makes illegal the use, persuasion, inducement, or enticement of children to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct. See <u>United States v. Wright</u>, 774 F.3d 1085, 1088 (6th Cir. 2014); <u>United States v. Buculei</u>, 262 F.3d 322, 328 (4th Cir. 2001). As the Fourth Circuit has pointed out, sexual

exploitation of minors "can be accomplished by several means and is often carried out through a period of grooming." Engle, 676 F.3d at 412. "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." Id. In this way, Section 2251(a) "targets the sexual grooming of minors as well as the actual sexual exploitation of them." Id. In other words, the law prohibits not only the production of child pornography by brute force, but the equally effective, destructive, and gradual breaking down of inhibitions so that minors can be sexually exploited. Courts have explicitly upheld convictions under this statute even if the minor acted voluntarily or willingly – this is the very definition of persuasion, inducement, and enticement – and Congress meant to criminalize such conduct. Engle, 676 F.3d 405 (Section 2251(a) is a law that aims to "criminalize the enticement of a minor to engage in sexual activity"); United States v. Mayer, 674 F.3d 942 (8th Cir. 2012) (Section 2251(a) conviction upheld even where victim-witness testified she took and sent explicit photos of herself "of her own free will," where defendant engaged in sexual conversations and requested photos). This is precisely such a production-by-persuasion case.

The terms "persuade," "induce," and "entice" are not statutorily defined. Being words of common usage, courts have accorded them their ordinary meaning. See, e.g., Wright, 774 F.3d at 1090 (quoting United States v. Sirois, 87 F.3d 34, 41 (2d Cir. 1996); United States v. Fadl, 498 F.3d 862, 866 (8th Cir. 2007); and Ortiz–Graulau v. United States, 756 F.3d 12, 18–19 (1st Cir.2014). With respect to "persuade," "induce," and "entice," the Engle court noted "the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." 676 F.3d at 412. As to the

4

word "use," the Sirois court described its ordinary meaning to include "to avail oneself of, and to carry out a purpose or action by means of." 87 F.3d at 41.

"Sexually explicit conduct" is defined to include, inter alia, actual or simulated masturbation or the lascivious exhibition of the genital or pubic area of any person. See 18 U.S.C. § 2256(2)(A). "Lascivious" has been defined as "exciting sexual desires; salacious." United States v. Williams, 444 F.3d 1286, 1299 (11th Cir. 2006), rev'd on other grounds, 553 U.S.C. § 2256(2)(A). "Lascivious" has been defined as "exciting sexual desires; salacious." United States v. Williams, 444 F.3d 1286, 1299 (11th Cir. 2006), rev'd on other grounds, 553 U.S. 285 (2008). In determining whether a depiction constitutes a lascivious exhibition of the genitals or pubic area, courts consider the following factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

United States v. Whorley, 400 F. Supp. 2d 880, 883-84 (E.D.Va. 2005) (citing United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986)); see also United States v. Campbell, 81 Fed.

5

Appx. 532, 536 (6th Cir. 2003) (applying Dost factors); United States v. Carroll, 190 F.3d 290, 297 (5th Cir. 1999), vacated on other grounds, 227 F.3d 486 (5th Cir. 2000) (same); United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999) (same); United States v. Amirault, 173 F.3d 28, 32 (1st Cir. 1999) (same). A visual depiction need not involve all of these factors to be a lascivious exhibition of genitals. Whorley, 400 F. Supp. 2d at 884.

Courts nationwide have found sufficient evidence of violations of 18 U.S.C. § 2251(a) where the defendant communicated with minors online and had the minors take pictures of themselves engaged in sexually explicit conduct through various means – exactly what occurred here. For example, in Mayer, the Eighth Circuit Court of Appeals affirmed a conviction for production of child pornography where the defendant met a minor female online through in interactive internet game and they continued to talk to each other through text messaging, web-camming, and phone calls. The two never met in person. During the course of their communications, the defendant engaged in sexually explicit conversations with the minor, and sent her sexually explicit photographs of himself. The defendant also asked the minor to send him sexually explicit pictures and videos, sometimes with specific requests regarding which body part to focus on. In response, the minor took pictures and videos of herself engaged in sexually explicit conduct and sent the visual depictions to the defendant. The court found sufficient evidence that the defendant "used, persuaded, induced and enticed" a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction." See also United States v. Wales, 127 Fed. Appx. 424, 430-33 (10th Cir. 2005) (not precedential) (upholding attempted production of child pornography and attempted enticement convictions where the defendant communicated with an undercover agent pretending to be a minor and "used flattery, highly charged sexual images, and a false female persona in his quest to obtain images of [a

6

minor] engaging in masturbation"); United States v. Puglisi, 458 Fed. Appx. 31, 33-34 (2d Cir. 2012) (not precedential) (upholding attempted production of child pornography conviction where the defendant requested via text message that the minor victim send him a picture showing "sweater no bra and touch yourself," and "naked photos"); United States v. Starr, 2006 WL 3050808 (N.D. Iowa Oct. 24, 2006) (finding sufficient evidence for attempted production of child pornography where the defendant developed an online relationship with a minor and repeatedly asked the minor to send nude photographs of herself over email); see also United States v. Corey Thomas Gallisdorfer, No. 1:12-CR-1 (M.D.N.C.) (production of child pornography conviction where 19-year-old defendant pretended to be a young female online and requested boys take pictures of their genitals); United States v. Wesely William Brandt, No. 8:11-CR-00058-T-17TGW (M.D. Fla.) (conviction for production of child pornography where defendant, pretending to be a 17 year-old, persuaded minor females to take sexually explicit photos of themselves and send to him via the internet); United States v. Joshua Rice, No. 5:12-CR-19 (N.D.N.Y.) (production of child pornography conviction where defendant asked a minor boy over text message to take a picture of the minor's penis in exchange for nude pictures of a female); United States v. John R. Harris, 3:09-cr-00112-RLM (N.D. Ind.) (conviction for production of child pornography were defendant enticed minor females with the promise of money to take nude photos of themselves and send to him); United States v. Ryan Huff, No. 4:09CR438RWS (E.D. Mo.) (conviction for production of child pornography where defendant used and persuaded minor to take and send pictures of her vagina over text message); United States v. Adam Hammond, No. 11-03038-01-CR-S-RED (W.D. Mo.) (conviction for production of child pornography where minor took explicit photos of herself pursuant to the defendant's request and sent the photos to defendant via text); United States v. Michael Meany, No. 2:10-

7

CR-00058 (E.D.La.) (conviction for production of child pornography based on defendant's requests to a minor to take sexually explicit pictures of herself with her cell phone and send them to the defendant).

Similarly, the legislative history of the statute makes clear that the production of child pornography of the kind here is something Congress meant to eradicate. See S. Rep. No. 95-438 (1977), 1977 WL 9660; Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102, 122 Stat. 4001 (2008) (stating that the growth of child pornography has been facilitated by the growth of the Internet, and that it "is a permanent record of a child's abuse and the distribution of child pornography images re-victimizes the child each time the image is viewed"); H.R. Rep. No. 557, H.R. REP. 105-557, 11-12, 1998 U.S.C.C.A.N. 678, 680-81 (1998), 1998 WL 285821:

> With the advent of ever-growing computer technology, law enforcement officials are discovering that criminals roam the Internet just as they roam the streets. While parents strive to warn their children about the dangers outside of the home, they are often unaware of the dangers within–on the World Wide Web. "Cyber-predators" often "cruise" the Internet in search of lonely, rebellious or trusting young people. The anonymous nature of the on-line relationship allows users to misrepresent their age, gender, or interests. Perfect strangers can reach into the home and befriend a child. . . .

Pursuant to the evidence in this matter, along with the substantial case law, the government has sufficient evidence to satisfy the second element.

    3.  <u>Third Element – Interstate or Foreign Commerce</u>

To meet its burden under the interstate or foreign commerce prong, the United States must establish any one of the following: (a) the defendant knew or had reason to know that such visual depiction would be transported using any means or facility of interstate or foreign commerce; or (b) the defendant knew or had reason to know that such visual depiction would be

transported in or affecting interstate or foreign commerce; or (c) such visual depiction was produced using materials that have been mailed or shipped or transported in and affecting interstate or foreign commerce by any means, including by computer; or (d) the visual depiction was actually transported using any means and facility of interstate and foreign commerce; or (e) the visual depiction was actually transported in and affecting interstate and foreign commerce.

Courts have held that the internet, e-mail, and cell phones are a means or facilities of interstate commerce. See, e.g., United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009) ("it is beyond debate that the Internet and email are facilities or means of interstate commerce"); United States v. Jacques, 2011 WL 1706765 (D. Vt. 2011) (same); United States v. Giordano, 442 F.3d 30, 39-40 (2d Cir. 2006) (cell phones are a facility or means of interstate commerce).

Further, the Courts have held that storage of child pornography on devices manufactured in interstate or foreign commerce is sufficient to satisfy the "produced using materials" prong of 2251(a). See, e.g., United States v. Mugan, 441 F.3d 622, 628 (8th Cir. 2006) (storage of offending images on electronic media storage previously transported in interstate commerce sufficient for Section 2251(a) conviction); United States v. Zimmerman, 529 F. Supp. 2d 778, 781 (S.D. Tex. 2007) (sustaining conviction under 2251 where the images of child pornography the defendant produced were found on CDs that traveled in interstate commerce).

B. DISTRIBUTION OF CHILD PORNOGRAPHY (COUNT SIX)

Count Six of the Indictment charges the defendant with receipt and distribution of child pornography. 18 U.S.C. § 2252(a)(2). To sustain its burden of proof of distribution of child pornography, the government must prove beyond a reasonable doubt:

> First: the defendant knowingly distributed a visual depiction;
>
> Second: the depiction was mailed, shipped, or transported in interstate or foreign commerce by any means, including computer;

> Third: Producing the visual depiction involved using a minor engaged in sexually explicit conduct;
>
> Fourth: the depiction is of a minor engaged in sexually explicit conduct;
>
> Fifth: The defendant knew the performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

See 18 U.S.C. 2252(a)(2).

## III. <u>EVIDENTIARY ISSUES</u>

### A. <u>PRESENTATION OF DEFENDANT'S CONTACT LIST.</u>

The Government gives notice of its intent to introduce the "contact list" from the cellular telephone that was found on Defendant's person and was allegedly used to contact and solicit images from the juvenile victims. The contact list contains the names and ages of the juvenile victims who will offer testimony in this case, as well as the names and ages of many other juveniles. The government anticipates that testimony from the witnesses will reveal that Defendant's *modus operandi* involved the solicitation of images from the juveniles in his contact list. Upon receipt of the images, Defendant would then threatened to expose those images unless the subject did not provide names, phone numbers and ages of other minors. The contact list will be presented as evidence in support of Counts 1 through 6. The government anticipates Defendant will argue this contact list is unduly prejudicial. For the reasons included below, the government submits that any prejudicial effect of this evidence will be outweighed by its relevance and probative value.

**Counts One through Five** (Sexual Exploitation of Children): The contact list from Defendant's phone will support the testimony offered by the juvenile victims. The contact list will be presented to show that the contact information of the juvenile victims represented by Counts one through five is stored in Defendant's cellular phone. The fact that the names of these

10

victims are accompanied by a parenthetical with their respective ages will also be presented as evidence of Defendant's knowledge of their ages.

The contact list contains the information of approximately 130 people. Many of the contacts appear to be of juveniles based upon the inclusion of the age of the person in the description. While the contact list has the names and ages of many persons who are not specifically included in the instant indictment, the government believes the list in its entirety is admissible *res gestae* because it is inextricably intertwined with the conduct in support of the offenses charged.

**Count Six** (Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct): This count contains a date range of June 1, 2017 through November 29, 2017. The entirety of the contacts included within the contact list were created in Defendant's phone within the above-described date range. This Count is not limited to the receipt and distribution of the images and files from the identified victim's represented by Counts one through five. The contact list will be offered by the government in support of its argument that Defendant knew the ages of these minors because he had already received explicit images from them, or he had learned of their ages by extorting the information from other minors who had sent him explicit images. The testimony of the minor victims will support the government's argument about Defendant's *modus operandi*.

**IV.　PRESENTATION OF CELL PHONE EVIDENCE AS A SUMMARY EXHIBIT CONTAINING THE TEXT MESSAGE, THE PARTICIPANTS' NAMES, THE TIMESTAMPS, A BMV PHOTO (IF AVAILABLE), AND THE RELEVANT CALL RECORDS.**

The extraction software used to examine Defendant's phones generated reports which display all text messages sent and received in reverse-chronological order. These reports do not sort text messages by participant or conversation. Thus, interpreting a text conversation from the

extraction report requires reading bottom-to-top, while skipping over text messages from different, unrelated conversations that may have been sent or received around the same time. The reports are typically long, cumbersome, and not readily understandable to the lay reader. Presenting the jury with only the cell phone extraction report would thus be confusing and inefficient.  To avoid this, the government intends to offer the relevant text messages in a more easily-readable summary exhibit, which includes the verbatim transcripts of the text conversation along with timestamps, participants' names, BMV photo (if available).

Federal courts have approved of the introduction of electronic conversations transferred into other formats, so long as the substance of the conversation is not altered or amended.  See, e.g., United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007) (transcripts of instant message conversations "largely cut from [a detective's] electronic communications [with defendant] and then pasted into word processing files" were sufficiently authenticated by detective and informant); United States v. Culberson, No. 05-80972, 2007 WL 1266131, at *2 (E.D.Mich. Apr. 27, 2007) (transcriptions of emails copied verbatim by federal agent were authenticated through "testimony from the preparer of the transcript and participants in the original emails"); Porter v. United States, No. 08-CV-1497, 2008 WL 5451011, at *3 (E.D.N.Y. Dec. 31, 2008) (transcripts of instant messenger conversations authenticated where "the prosecution offered in evidence transcripts of the instant messenger conversations in the form of a WordPerfect document created using a cut-and-paste method, which preserved the conversations in their entirety"); United States v. Lundy, No. 10-60986, 2012 WL 1021795, at *6 (5th Cir. 2012) (upholding the admission of transcripts of online chats through Yahoo! that a detective copied and pasted into a word processing program that accurately reflected the contents of the chats).

12

Further, Federal Rule of Evidence 1006 provides that a proponent may use "a summary, chart or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The admission of evidence under Rule 1006 is within the discretion of the district court. United States v. Williams, 952 F.2d 1504, 1519 (6th Cir. 1991) ("Defendant has not shown how the charts in question unfairly prejudiced him. The district court thought they were 'classic visual aids' and admitted them to aid the jury in its analysis of the case. That action was well within the district court's discretion.").

Here, presenting the jury with summaries of the extraction report would assist their understanding of the case without causing any unfair prejudice to the Defendant. The extraction report is difficult to read because it displays texts from bottom-to-top and often requires the reader to skip over extraneous conversations. The summaries simply copy-and-paste all of the relevant information into a mock smartphone display that jurors are likely to recognize. And the Defendant will be free to cross-examine the witness who presents these summaries as to their accuracy. In short, the text message summaries will make for a more efficient trial and an easier to understand case.

### V. CONCLUSION

The Government respectfully submits this trial brief for the Court's consideration, and asks that the Court consider and address the legal issues raised above.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ *Carol M. Skutnik*
Assistant U.S. Attorney (OH: 0059704)
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
(216) 622-3785 / (216) 522-8355 (fax)
Carol.Skutnik@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ *Carol M. Skutnik*
Carol M. Skutnik
Assistant U.S. Attorney